### GENERAL ELECTRIC CO. v. ALEXANDER et al.

(Circuit Court of Appeals, Second Circuit. April 10, 1922.)

#### No. 262.

**1. Patents ⊚⇒97—Prior foreign patent does not invalidate, unless it claims same invention.**

The defense of invalidity because of a prior foreign patent, under Rev. St. § 4887 (Comp. St. § 9431), puts a heavy burden on defendant, who, must show that the invention actually claimed in the foreign and domestic patents are identical; it being insufficient that the foreign patent discloses, but does not claim, the invention claimed in the domestic patent.

**2. Patents ⊚⇒97—Foreign process patent prevents subsequent patent for product of process.**

A foreign patent for a process, whose only use is to make a particular product, prevents a subsequent attempt more than two years later to get American protection for the product.

**3. Patents ⊚⇒97—Foreign patent for inoperative process cannot defeat subsequent product patent.**

A foreign process patent, disclosing an inoperative process, which, therefore, could not produce plaintiff's product, does not invalidate a subsequent American patent for the product which the process attempted to obtain, since the process and product patents manifestly do not claim the same invention.

**4. Patents ⊚⇒328—1,018,502, for tungsten lamp filament, held infringed.**

The Just and Hanaman patent, No. 1,018,502, for electric lamp filament composed of pure, coherent, or homogeneous tungsten, *held* infringed by a lamp filament made of tungsten, in which there was a small quantity of thoria, to stiffen the filament.

**5. Patents ⊚⇒226—Substantial appropriation of function by substantially patented means is infringement.**

While impairment of function is no defense to infringement, and improvement of function is oftentimes patentable, the substantial appropriation of the function of a patent by using substantially the patented means is always infringement.

**6. Appeal and error ⊚⇒959(2)—Equity ⊚⇒297—Whether supplemental bill may be filed rests in court's discretion.**

Whether a supplemental bill may be filed, or plaintiff required to file a new bill, usually rests in the discretion of the trial court, and is not subject to review, if no abuse is shown, and the procedure of permitting supplemental bills should be favored.

**7. Patents ⊚⇒287—Infringing business by partnership and by corporation held continuing infringement.**

Where two partners were engaged in an infringing business, and one of them bought the interest of the other and formed a corporation, of which

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

he was sole stockholder, president, and treasurer, which continued the infringing business, both the purchasing partner and the corporation have been engaged in one continuing infringement and may be jointly sued.

**8. Patents ☞285—Joining separate causes of action against partners and subsequent corporation held proper.**

Even if a suit against a corporation for infringement of a patent was a separate cause of action from the suit against its sole stockholder for infringement before he formed the corporation, there were sufficient grounds for uniting the causes of action against the two defendants to promote the administration of justice, under equity rule 26.

**9. Patents ☞290—Sole stockholder and manager of corporation may be enjoined.**

In a suit for infringement of a patent brought against a corporation, the sole stockholder of the corporation who was its president and treasurer, may properly be joined with the corporation.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity for infringement of a patent by the General Electric Company against F. Alexander and another. Decree for plaintiff (277 Fed. 290), and defendants appeal. Affirmed.

Action is upon the Just and Hanaman patent, No. 1,018,502, and the Langmuir patent, No. 1,180,159. Both patents have been sustained in this circuit; the former in General Electric Co. v. Laco-Phillips Co., 233 Fed. 96, 147 C. C. A. 166, and the latter in General Electric Co. v. Nitro-Tungsten Lamp Co. (C. C. A.) 266 Fed. 994, in which reported decisions the patent claims are sufficiently set forth. The trial court upheld both patents and declared infringement. Defendants appealed.

Charles J. Holland and Cornelius C. Billings, both of New York City, for appellants.

Frederick P. Fish, of Boston, Mass., Hubert Howson, of New York City, and Albert G. Davis and Alexander D. Lunt, both of Schenectady, N. Y., for appellee.

Before HOUGH and MANTON, Circuit Judges, and GARVIN, District Judge.

HOUGH, Circuit Judge. The subject-matter of this litigation is the commercial article known as the tungsten-nitrogen lamp, in making which both the patents in suit are used, as is also the Coolidge patent 1,082,933, lately considered at length and broadly upheld in General Electric Co. v. Independent, etc., Co. (D. C.) 267 Fed. 824. The exhaustive opinion of Mayer, J., resulting in the decree appealed from, is reported in General Electric Co. v. Alexander (D. C.) 277 Fed. 290.

Reported decisions have, we think, rendered unnecessary further discussion of what may be called the history or technical literature of the three patents mentioned. Adhering, as we do, to our previous rulings above referred to, we shall now treat everything but what are called new questions of law, largely by reference to reports.

It is proved, and indeed admitted, that both the individual and cor-

porate defendants have made and/or sold tungsten-nitrogen lamps substantially identical with those made and sold by plaintiff under the asserted protection of the Just and Hanaman, Coolidge, and Langmuir patents. Indeed, defendant's lamp is the same thing as that which was before us in 266 Fed. 994, except that it appears to be somewhat better made. That this product of defendants infringes the Langmuir patent we hold to be too plain for discussion; all that need be said on this subject has been said either in our previous decision on the subject, or in this case, and by the court below in 277 Fed. at page 291.

The defenses urged against the Just and Hanaman patent are:

(1) That the same patentees obtained German patent, 154,262, valid from April 15, 1903, for substantially the same invention as is revealed by their patent in suit applied for July 6, 1905; wherefore the patent at bar is invalidated under Rev. Stat. § 4887 (Comp. St. § 9431).

(2) There is no infringement, because defendant's filaments contain an extremely small quantity of thoria, which prevents said filaments being the "pure, coherent, or homogeneous" tungsten filaments of Just and Hanaman. Vide claims, 233 Fed. at 971, 147 C. C. A. 166. In point of fact defendant's filaments are admittedly made in the manner of Coolidge, and contain thoria for the reasons and purposes set forth in Coolidge's disclosure. Cf. (D. C.) 277 Fed. 292, 293, and (D. C.) 267 Fed. 839.

[1] 1. The defense of invalidity under section 4887 puts a heavy burden on a defendant. The various amendments to that section have not changed the truth of Judge Putnam's statement in Westinghouse, etc., Co. v. Stanley, 138 Fed. 823, 71 C. C. A. 189, that the act applies only to cases where the inventions actually claimed in the foreign and domestic patents are identical. It is not sufficient that the foreign patent may disclose the invention of the later United States patent where it is not therein claimed. We agree also with the somewhat similar language of Judge Coxe on this subject in Brush, etc., Co. v. Accumulator Co. (C. C.) 47 Fed. 48.

The claim of the German patent is for a process, and we agree with the court below (vide 277 Fed. 295–299) that the German process is wholly inoperative, in that it cannot produce the product covered by the patent in suit. The essential reason for this conclusion is that doing what the German patent calls upon one to do will never replace carbon by tungsten. The process rests upon the theory of replacement, and that theory has no substratum of fact.

[2, 3] The German patent being for a process, and the one at bar for a product, it is true that, if the only use of the process is to make the product, such foreign process patent would and should affect an attempt to get American protection for the product. But that is not here true; this German process patent will not make, and never has made, anybody's incandescent lamp filament, and especially will it not make the product of the patent in suit. Therefore in no sense are the two patents for the same invention (Holmes, etc., Co. v. Metropolitan, etc., Co. [C. C.] 22 Fed. 341) whether one regards the proven facts, or the language of disclosures and claims. In point of fact this defense is not new, as appears from our records. It was formally pleaded, but:

early abandoned by the very skilled counsel for the defense in the Laco-Phillips Case, 233 Fed. 96, 147 C. C. A. 166.

[4] 2. The defense based upon the presence of thoria may be thus stated: Defendants admit the use of Coolidge's thoria-containing filament; but, as they are not now sued on the Coolidge patent, they cannot infringe here. To be sure, our decision in the Laco-Phillips Case, supra, specifically held that a Coolidge drawn filament infringed the Just and Hanaman patent, although it was an improvement of such a striking nature that it completely drove all other tungsten filaments from the market. But it does not appear that this court has heretofore recognized Coolidge filaments as normally containing thoria, although it is fairly certain that they have usually contained that substance, and of course it has always functioned in the mechanical way now proven and sufficiently stated in the opinion below, 277 Fed. 293.

[5] While fully adopting what was said below on this subject, it may be pointed out that while impairment of function is no defence to infringement, and improvement of function is oftentimes patentable matter of a very valuable kind, if the functioning of a patent is substantially appropriated by substantially using the patented means, infringement always exists. The object of all makers of incandescent light filaments is to get the best light, and what at present makes the tungsten filament the best light-giving means is pure, cohering, and homogeneous tungsten. Tungsten of that kind is functioning just the same with or without the mechanical thoria stiffener. This is true, no matter whether the slender thread of incandescence is made by Just and Hanaman, or by Coolidge; by this plaintiff, or these defendants. On this subject of substantial appropriation of another man's protected concept and means of expression thereof, reference may be made (in addition to the cases cited below) to Treibacher v. Roessler, 219 Fed. 210, 135 C. C. A. 108, affirming (D. C.) 214 Fed. 410.

Defendants further object to the bringing or maintenance of this particular suit. Defendant Alexander and one Fabian were once partners trading as Alpha Electrical Laboratories. This concern sold infringing lamps, whereupon this action was brought against the partners trading as aforesaid. Subsequently plaintiff learned that, before bill filed, the business had been incorporated as Alpha Laboratories, Inc., at which time Alexander had bought out Fabian and become the owner of all the shares in the new company, as well as its president and treasurer. Thereupon by leave of court supplemental bill was filed, bringing in the corporate defendant; and there is proof that the corporation continued to do the same business and make and sell the same infringing lamps as did the partnership. At trial bill was dismissed as to Fabian, and injunction given and accounting ordered against both Alexander and the corporation.

[6] On this state of facts it is asserted (1) that there is an improper joinder of causes of action, in that no single liability has been asserted or proven against both defendants, and that (2) no decree should have passed against Alexander because he was "merely a stockholder or treasurer" of the infringing corporation. Whether a supplemental bill may be filed, or plaintiff driven to filing a new bill, is usually mat-

ter of discretion in the trial court. Rosemary, etc., Co. v. Halifax (C. C. A.) 266 Fed. 363. Discretion is the subject of review, if abused, but no abuse is shown here; on the contrary, the procedure, though of modern growth, tends to economy and speed and is to be favored.

[7] Defendant's argument rests on the thought that there are two infringements, and no legal connection between them; because one was committed by Alexander as a partner and the other by a corporation of which Alexander is President, Treasurer and sole share owner. What is infringement is largely matter of fact, and the fact is that this infringement was one continuing act, in which Alexander participated, first as partner, and then in his various corporate capacities. Ordinarily the treasurer (or the like) of a corporation is, if not a servant, at any rate but a part, of the corporate organization; a man who in matters of infringement oftentimes differs in degree only, and then but slightly, from a salesman or agent. This is not true here, for Alexander with a partner began infringement, bought out the partner and continued infringement, by means of a corporation which for all purposes of direction and profit is no more than Alexander himself.

[8, 9] The answers to defendant's position are three: (1) Both defendants have been and are engaged in one continuous and continuing infringement. (2) Even if this were not true, there are "sufficient grounds" for uniting the causes of action against the two defendants "in order to promote the convenient administration of justice." Equity rule 26; Marcus Brown Co. v. Feldman (D. C.) 269 Fed. 306, affirmed 256 U. S. 170, 41 Sup. Ct. 465, 65 L. Ed. 877. (3) Under the circumstances shown, Alexander would still be a proper person to enjoin with his corporation. Prest-o-Lite Co. v. Acetylene, etc., Co. (D. C.) 259 Fed. 940, and cases cited.

Decree affirmed, with costs.